UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| GIBSON FOUNDATION, INC., | ) | |
|---|---|---|
| A DELAWARE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-1109 |
| | ) | |
| ROB NORRIS D/B/A THE PIANO | ) | |
| MILL, A CITIZEN OF | ) | |
| MASSACHUSETTS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is a lawsuit about the possession and ownership of a Baldwin piano once owned by Liberace. Rob Norris d/b/a/the Piano Mill ("the Piano Mill), claims that the suit does not belong in this Court, and has accordingly filed a Motion to Dismiss for lack of personal jurisdiction and improper venue (Doc. No. 9), to which the Gibson Foundation, Inc. ("the Foundation") has responded in opposition (Doc No. 16), and the Piano Mill has replied (Doc. No. 20). Because this case clearly does not belong here, the Piano Mill's Motion will be granted to the extent that it alternatively requests that this case will be transferred to the District of Massachusetts.

## I. Background

The Foundation is a Section 501(c)(3) nonprofit charitable organization and is a Delaware corporation with a principal place of business in Nashville, Tennessee. The Piano Mill – an individual with a "d/b/a" – is a citizen of Massachusetts.

According to the Complaint, the Foundation's predecessor-in-interest, Gibson Brands Inc., ("Gibson") held title to the Liberace piano at issue, which was manufactured by Baldwin Piano, Inc.

("Baldwin"), a wholly-owned subsidiary of Gibson. The piano had an appraised value of $500,000, and was stored in New York.

Also according to the Complaint, sometime in 2011, the Piano Mill contacted Gibson and Baldwin Piano and informed them that the Piano Mill desired to have a Baldwin Concert Grand Piano for symphony rentals and promotional opportunities. Because the Piano Mill was not in a position to purchase one for approximately $30,000, it proposed that, in exchange for Gibson loaning a Baldwin Concert Grand Piano, Piano Mill would restore, promote and store a piano. As it turns out, Gibson was looking to warehouse the Liberace piano in a place other than New York City so as to generate additional goodwill for the Baldwin brand through its display and promotion in a different venue.

Consequently, at some point in 2011, the parties reached an agreement, the substance of which is as central to this lawsuit as it is disputed. The Foundation insists the parties agreed that Gibson would loan the Liberace piano to Piano Mill for free in exchange for the Piano Mill picking the piano up from its New York location, doing any needed restoration, and housing and promoting the piano. Thus, according to the Foundation, there was an enforceable contract and bailment relationship between the parties. The Piano Mill claims it was told that it could keep the piano if it was successful in removing the piano from the Hammerstein Ballroom in New York City, yet, eight years later, it finds itself sued in Nashville, Tennessee for conversion, breach of contract, and breach of bailment.

## II. Legal Analysis

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts,' Walden v. Fiore, 577 U.S. 277, 283 (2014), and,

2

thus, in order for this Court to have personal jurisdiction over the Piano Mill, the Foundation must show that the Piano Mill has (or had) sufficient minimum contacts with Tennessee such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts exist where a defendant purposefully avails itself of the privilege of conducting activities within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

"Personal jurisdiction may be found either generally or specifically." Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012) (quoting Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549-50 (6th Cir. 2007)). A plaintiff has the burden of showing personal jurisdiction, but "that burden is 'relatively slight' where, as here, the . . . court rules without conducting an evidentiary hearing." MAG IAS Holdings, Inc. v. Schmuckle, 854 F.3d 894, 899 (6th Cir. 2017) (citing Air Prods. 503 F.3d at 549). "To defeat dismissal in this context, [the plaintiff] need make only a prima facie showing that personal jurisdiction exists." Id. Nevertheless, "[i]n response to a motion to dismiss, the plaintiff may not stand on [its] pleadings, but must show the specific facts demonstrating that the court has jurisdiction." Miller, 694 F.3d at 678 (citing Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)). Although the Foundation asserts that this Court has jurisdiction and venue over the litigation, its efforts to show either general or specific jurisdiction fall flat.

"General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant." Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147,149 (6th Cir. 1997)). Here, the Foundation "does not contest that Piano Mill is not subject to general personal jurisdiction in Tennessee." (Doc.

3

No. 16 at 3). This is hardly surprising given a declaration from Norris in which he avers that neither he nor the Piano Mill (1) ever resided in Tennessee; (2) ever knowingly derived any income in Tennessee; (3) have any offices or employees in Tennessee; (4) own or rent property in Tennessee; (4) have any bank accounts, licenses, or other operations in Tennessee; or (5) directly advertise in Tennessee. Instead, the only contact with this state occurs when piano strings are required to be repaired in Tennessee, and that did not happen with regard to the Liberace piano. (Doc. No. 11, Norris Decl. at ¶¶ 4-16).

Specific jurisdiction, on the other hand, deals with a defendant's contacts with the forum state relating to the claims at issue. The Sixth Circuit has identified three criteria for specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

AlixPartners. LLP v. Brewington, 836 F.3d 543, 549-50 (6th Cir. 2016) (quoting Air Prods., 503 F.3d at 550). "If any of the three requirements is not met, personal jurisdiction may not be invoked." Miller, 694 F.3d at 680. That is, "each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction" does not exist. LAK Inc. v Deer Creek Enters., 885 F.2d 1293, 1303 (6th Cir. 1989). Although the Foundation presents a two-prong approach in attempting to show specific jurisdiction, it has established none of the three criterion required by the Sixth Circuit.

First, the Foundation argues that the Piano Mill purposely availed itself of the privilege of acting in Tennessee by "deliberate[ly] undertaking to inquire about and to cause the bailment

4

contract to be formed by contacting Gibson regarding a potential agreement." (Doc. No. 16 at 5). As support, it points to a string of emails between Norris and Tom Dorn, whom the Foundation identifies as an employee of Gibson.

Leaving aside that the Foundation and Gibson are apparently separate legal entities such that the employee of one is not necessarily an employee of the other, nothing about those emails suggest that Norris d/b/a the Piano Mill was knowingly interacting with a Tennessee resident. To the contrary, Dorn's email address was "baldwin.tdorn@gmail.com," suggesting that he was an employee of Baldwin, not Gibson the Tennessee resident. See, Schwartz v. Elec. Data Sys., Inc., 913 F.2d 279, 283 (6th Cir. 1990) ("When formal separation is maintained between a corporate parent and its corporate subsidiary, federal court jurisdiction over the subsidiary is determined by that corporation's citizenship, not the citizenship of the parent."); accord, OneWest Bank, N.A. v. Melina, 827 F.3d 214, 221 (2d Cir. 2016). Further, the telephone number for Dorn had a 414 prefix, which is the area code for Milwaukee, Wisconsin. Additionally, Dorn identifies himself in one of the emails as a "piano distributor," not as an employee of the Foundation, or Gibson, or as a resident of Tennessee. Finally, the emails have no relation to whatever agreement may have finally been reached about the Liberace piano because they end with Norris telling Dorn that the Piano Mill is "a full restoration shop," and speculating that there might be "a road worn concert grand in Baldwin[']s stable" that the Piano Mill could get "back on the road." (Doc. No. 18-1 at 2).

Second, the Foundation argues that the Piano Mill availed itself of the privilege of acting in Tennessee via its website. This argument is even less meritorious than the first.

The Sixth Circuit has held that the operation of "a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction," even where the website enables the

5

defendant to do business with residents of the forum state, because such activity does not "approximate[ ] physical presence within the state's borders." Bird v. Parsons, 289 F.3d 865, 874 (6th Cir. 2002). It has also observed, however, that

> the operation of a website may justify specific jurisdiction, if it satisfies the three factors set forth in Southern Machine [Company, v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir.1968)], namely, if the operation of the website constitutes purposeful availment, is the basis of the cause of action against the defendant, and jurisdiction over the defendant is reasonable. There is strand of law which holds that whether a court can assert specific personal jurisdiction over a website owner depends on how interactive the website is with the people in the forum state. There is another relevant strand of law dealing with whether the court can assert personal jurisdiction over defamatory publications which reach into the forum state. . . .
>
> The "operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state ... if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." Bird, 289 F.3d at 874 (internal quotations omitted). In evaluating whether the defendant's contact with the forum state constituted purposeful availment, this and other circuits have used the "Zippo [v. Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa.1997)] sliding scale" approach, which distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site. . . . Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction.

Cadle Co. v. Schlichtmann, 123 F. App'x 675, 677–78 (6th Cir. 2005).

The Foundation does not address the "Zippo sliding scale," or even suggest that the Piano Mill website is truly interactive with residents of Tennessee, or was at the time the alleged agreement was reached. Instead, it presents a declaration from counsel in Atlanta, Georgia, in which she merely states that (1) she has accessed the Piano Mill website, (2) the website provides "information, pricing and services for the sale and delivery of pianos (and other instruments) as well as lessons for the same," and (3) "[t]his website is generally accessible on the worldwide web." (Doc. No. 17, Bates Decl. ¶ 3). This is not nearly enough.

In addition to there being no jurisdiction in this Court, venue is improper because this is not "a judicial district in which any defendant resides," or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b). Where, as here, "venue is improper . . . the case must be dismissed or transferred under § 1406(a)," Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 56 (2013), which allows for a transfer to the court or district where the case could have been brought. Here, the Piano Mill is a resident of Massachusetts, and the Liberace piano is stored in that state. Accordingly, the case will be transferred there.

### III. Conclusion

On the basis of the foregoing, the Piano Mills' Motion to Dismiss (Doc. No. 9) will be granted solely to the extent that it request that this case be transferred to Massachusetts.

An appropriate Order will be entered.

_____
WAVERLY C. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE